HOWELL ALLEY AND LOUELLA ALLEY HASTINGS *v.*
JOE MARTIN

5-5449                                          464 S. W. 2d 591

Opinion delivered March 1, 1971
[Rehearing denied April 5, 1971.]

*Elbert S. Johnson,* for appellants.

*Gardner & Steinsiek,* for appellee.

FRANK HOLT, Justice. This is a boundary line dispute between adjoining landowners. Appellee, who owns the southern or "lower" tract, brought suit in equity to enjoin appellants, owners of the northern or "upper" tract, from trespassing upon a 33-foot-wide strip of land which runs along and inside of the southern edge of the upper tract. Appellee claims ownership of this strip by adverse possession, whereas appellants claim it as a part of their upper tract by warranty deed. From a decree apportioning the strip of land between the parties and enjoining further trespass, appellants bring this appeal. For reversal appellants contend that the decree is contrary to the law and the evidence and that the court erred in refusing the appellants' motion for a new trial. Basically, the appellants contend for reversal that the findings of the

chancellor are against the preponderance of the evidence. We cannot agree.

About 45 years prior to this action, the two tracts constituted a single parcel. The then owner excavated a drainage ditch traversing, in an east-to-west direction, the half-mile width of that parcel. Thereafter, upon purchasing the upper tract in 1945, appellants' predecessor in title caused a survey to be made which revealed that the boundary of the upper tract extended from approximately 25 to 30 feet south of the drainage ditch. Since the severed southern strip of this upper tract was not convenient to farm, it had been, prior to this 1945 purchase, converted into a utility roadway servicing both the upper and lower tracts. Appellants continued, as did their predecessor in title, to use the strip for this purpose.

Appellee purchased the lower tract in 1969, apparently under the misconception that its northern boundary extended to the drainage ditch. He instructed his tenant farmer to plow up the roadway and to plant crops up to the ditch. Appellants thereupon caused another survey to be made which reestablished their southern boundary line as extending from 25 feet beyond the drainage ditch at one end to 33 feet beyond the ditch at the other. Appellants then disked up appellee's crop to this survey line. Appellee secured a quitclaim deed, executed by his two immediate predecessors in title, which described the lower tract as extending northward to the center of the ditch. He then instituted the present action.

Testimony established, and appellants admit, that the lower tract had, since at least 1946, been farmed up to the roadway. However, appellants contended, and adduced other testimony, that the roadway occupied the total width and length of the severed strip. Appellee's evidence, on the other hand, was to the effect that the roadway extended no further in width than 10 feet south of the ditch. There is no question that if the roadway was of a width less than that of the half-mile severed strip (25 to 33 feet), then appellee, through his predecessors in title, gained title to the

remainder of the strip by adverse possession. The only real issue, therefore, concerns the width of the roadway prior to being plowed up by appellee's tenant farmer. The chancellor's decree established the boundary line as running 15 feet from the center of the drainage ditch. This was, as we understand it, to have the effect of allowing appellants a 10-foot-wide roadway between their drainage ditch and the new boundary.

In no event, however, has appellee acquired title to the actual space occupied by the roadway. Adverse possession without color of title does not extend beyond actual occupancy. *Coslin* v. *Crossett Co.,* 233 Ark. 13, 342 S. W. 2d 303 (1961); *Fee* v. *Leatherwood,* 232 Ark. 817, 340 S. W. 2d 397 (1961); *Cooper* v. *Cook* 220 Ark. 344, 247 S. W. 2d 957 (1952). Obviously, it was appellee's purpose to gain such color of title by acquiring, two days before he instituted this action, a quitclaim deed from his predecessors in title describing the lands therein conveyed as extending northward to the drainage ditch. But this deed is ineffective to extend appellee's claim to include the actual roadway since the roadway was continuously in use by appellants, thus repelling the assertion of adverse possession.

Equity cases are, of course, reviewed de novo on appeal; and the chancellor's findings, unless against the preponderance of the evidence, must be affirmed. In regard to the width of the roadway, we note that upon examining the record, the conflicting evidence appears to be evenly poised. In such instances we defer to the judgment of the chancellor who was in a superior position to determine the credibility of the witnesses. *Munn* v. *Ratcliff,* 247 Ark. 609, 446 S. W. 2d 664.

In the case at bar, the decree of the chancellor is affirmed.