Coy SANDERS et ux v. Sam JACKSON

5-5986                              482 S.W. 2d 621

Opinion delivered July 17, 1972

1110

*W. G. Wiley,* for appellants.

*Poynter & Huckaba,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellants bring this appeal from an adverse decree of the trial court finding them indebted to appellee for his services in drilling a well on their property. Both parties admit that there was an oral contract for such purpose, but differ as to its terms and meaning. Five points are urged for reversal, most of which either challenge discretionary rulings made by the chancellor or allege that the findings and decree are against the preponderance of the evidence. Appellants also contend that the governing law at the time this cause of action arose is contrary to public policy and the best interest of society. We are unable to say that there was any error.

Coy Sanders and his wife, Wanda, defendants below and appellants here, contracted with appellee Sam Jackson for the digging of a well on their property. This much is clear from the testimony on both sides. The evidence concerning the question of the promised performance, i.e., whether a specified quantity of water would be produced, is, to say the least, sharply contradictory. Because of this, we give great weight to the chancellor's finding of facts. *Guaranty Financial Corp.* v. *Harden,* 244 Ark. 846, 427 S.W. 2d 548. No useful purpose would be served by detailing the testimony, for, at best, the evidence appears to be evenly poised and in such case we defer to the judgment of the chancellor who was in a superior position to deter-

mine the credibility of the witnesses. *Alley* v. *Martin,* 250 Ark. 74, 464 S.W. 2d 591; *Cochran* v. *People's Exchange Bank,* 176 Ark. 830, 4 S.W. 2d 515; *Walt* v. *Phillips,* 166 Ark. 163, 266 S.W. 71. The chancellor who heard this matter was in a better position than this court to observe the demeanor, appearance, mannerisms, candor or lack of candor of the witnesses, and we are unable to say that his findings are clearly against the preponderance of the evidence. See *May* v. *Alsobrook,* 221 Ark. 293, 253 S.W. 29.

Appellants argue that the chancellor erred when, after the case had been taken under advisement, he refused to reopen it in order for appellants to offer expert testimony that the well was, for all practical purposes, dry. Appellants admit, and we have held, that the reopening of a cause for admission of additional testimony is within the sound judicial discretion of the chancellor. See *Halk* v. *Soncini,* 208 Ark. 736, 187 S.W. 2d 960; *Harrison* v. *Mobley,* 214 Ark. 472, 217 S.W. 2d 242; *Fromholz* v. *McGahey,* 120 Ark. 216, 179 S.W. 360. Reversal is required only where there has been a manifest abuse of this discretion. *Rinke* v. *Shackleford,* 248 Ark. 941, 455 S.W. 2d 83; *Harrison* v. *Mobley,* supra. The chancellor in refusing to reopen this trial gave the following reasons:

> There was no claim of surprise made at the trial; appellants made no showing that, if they were surprised, they had made diligent efforts to ascertain the nature of appellee's evidence prior to the trial; that the cause was filed on August 18, 1969; that the record reflected two pretrial conferences; that the case was tried on March 16, 1971; that the motion to reopen was made March 25, 1971, after the case was taken under advisement; that while appellee had propounded interrogatories to appellants, served requests for admissions and obtained a court order authorizing discovery and inspection of the well, appellants took no pretrial discovery steps; that no evidence of the materiality of appellants' test, made on March 18, to the question of productivity of the completed well on May 23, 1969, was offered or alleged.

We find no abuse of the chancellor's discretion in not permitting appellants to reopen the case, nor are we impressed

by their argument that it was the duty of appellee to introduce expert testimony on this matter, or their belated claim of surprise because appellee did not do so.

Before trial appellants offered to prove by the testimony of one Dale Townsend that appellee had a bad reputation as a well digger among the community and that he had performed unsatisfactorily for Townsend, and had experienced similar difficulties with others in the county. The proffered testimony involved transactions with parties other than appellants. Ordinarily this type of testimony is not admissible. We are unable to say that appellants were prejudiced by the chancellor's determination that any prior breach of contract by appellee was not relevant to the issue before the court or that appellee would not have been prejudiced by its admission. See *Davison* v. *Harris,* 165 Ark. 518, 265 S.W. 67. In a related situation we have noted that this question is largely one of relevancy. It would have been an entirely different matter had appellants sought to introduce this testimony as evidence bearing on intent. *Fulwider* v. *Woods,* 249 Ark. 776, 461 S.W. 2d 581. We agree with appellants that a litigant may impeach a witness by testimony that his reputation for truth and morality is bad, but appellants' offer of proof as to the testimony of Townsend did not indicate that the witness would testify on that point.

Appellants urge that the law prior to the passage of the Arkansas Water Well Construction Act [Ark. Stat. Ann. §§ 21-2001—21-2020 (Supp. 1971)] is against public policy and contrary to the best interest of the people. It appears that appellants are contending that appellee should have been a licensed water well contractor as now required under § 21-2011. While we do not say that it would not have been better had appellee been a licensed contractor, we cannot say that his lack of a license was contrary to the interest of the people nor violative of public policy.

Since we find no error, the decree is affirmed.